IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSE GARCIA,

    Plaintiff,

v.       No. 04 C 8342

DONALD HULICK,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Jose Garcia, pro se, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a 1998 bench trial in the Circuit Court of Cook County, Illinois, Mr. Garcia was convicted of first degree murder, aggravated battery, and unlawful use of a weapon. He received concurrent sentences of 32 years on the murder charge, five years for the aggravated battery, and three years for unlawful use of a weapon. I deny the petition.

### Factual Background

In the early morning of May 26, 1996, Maria Marquez was sleeping in the Chicago home she and her siblings shared with their parents, Alberta Hernandez and Eliseo Hernandez Senior. At approximately 2:17 am, she was awakened by knocks on the door. Tomas Hernandez, the father of Maria's youngest son, was the caller and insisted on speaking with her. Maria had recently broken up with Tomas. Despite requests by various members of Maria's family

that he leave, Tomas refused to do so. Alberta, who operated the bar next door, testified that she first saw Tomas that night standing at the door of the bar. All of the patrons and Tomas were asked to leave. Alberta went home, and from the house she saw Tomas trying to open Maria's car door. At her request, her son Martin went out to speak to Tomas and the two men got into a fist fight. The fight ended with Martin having gained the upper hand, and Tomas left the scene in his car saying that he would be back. Thereafter, that same night, Tomas returned to vandalize Maria's car. Two men wearing stocking masks exited Tomas's car. One man shattered the windows of Maria's car. Tomas stood nearby watching. One of the two masked men hit Maria's brother in the face with a metal club. Jerry Hernandez then came out of the house with a club and approached Tomas' car. While Maria argued with Tomas, Mr. Garcia came out of the alley holding a gun and fired three shots at Jerry. Tomas shouted, "No, Little Mo." Jerry was taken to the hospital, but died of a bullet wound.

Tomas, who had been taken into custody by police, said he did not know the name of the shooter, but that his nickname was Little Mo. He gave police the location of the building in which Little Mo was staying. When police knocked on the door of that dwelling, they were met by a young woman who, when asked whether it was her apartment, said no and pointed at a man named Juan Patella who was standing behind her. Patella was asked by the police if they

2

could enter and search for Little Mo within the apartment. The police found Mr. Garcia sleeping in a bedroom. Nearby was a .22 caliber pistol. Mr. Garcia initially denied having any involvement in the shooting, but ultimately confessed to the crime, stating that Jerry had been carrying a bat and had raised it to strike him. Mr. Garcia also said that he had covered his face and fired two shots.

At the pre-trial conference of his criminal case, Mr. Garcia was offered a 25-year sentence for a plea of guilty. He elected to go to trial instead. The trial judge found him guilty of the three crimes and sentenced him as described above.

I.

Mr. Garcia appealed his conviction and sentencing to the Illinois Appellate Court on the following grounds: 1) his conviction for first degree murder should be reversed to second degree murder; 2) he was offered a 25-year sentence at the pre-pretrial conference, and the trial judge erred in imposing a 32-year sentence; 3) his mittimus should be amended to reflect his entitlement for good-time credit ; and 4) the trial court incorrectly denied his motion to suppress evidence. The court affirmed his convictions, but remanded the case so that the trial court could admonish Mr. Garcia that under Illinois Supreme Court Rule 605 it was necessary to file a motion to reduce sentence in order to challenge the sentences that had been imposed. Mr. Garcia

3

filed a motion for rehearing, which was denied on September 7, 2001.

On remand, the trial court re-admonished Mr. Garcia and denied his motion to reduce the sentence on June 7, 2002. Mr. Garcia appealed this decision, and appointed counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Mr. Garcia did not respond to counsel's petition, and on January 30, 2004, the Illinois Appellate Court granted counsel leave to withdraw and affirmed the ruling denying Mr. Garcia's motion for reduction of sentence. Mr. Garcia then filed a petition for leave to file to the Illinois Supreme Court, claiming that the Appellate Court had erred in granting counsel leave to withdraw. On October 6, 2004, the Illinois Supreme Court denied the petition for leave to appeal. Under *People v. Woods*, 193 Ill.2d 483, 489 (2000), Mr. Garcia's conviction became final on June 7, 2004. He did not file a post-conviction petition under State law , and his time to do so has expired with respect to his convictions. 725 ILCS 5/122-1.

On or about December 30, 2004, defendant filed his present petition in this court.

## II.

Title 28 U.S.C. § 2254 governs the present proceedings and provides a "highly deferential standard of review"with respect to the underlying state court decisions. Under this standard, I must respect the state court decisions and give them "the benefit of the

doubt". *Woodford v. Visciotti.* 537 U.S. 19, 24 (2002). I may grant habeas corpus only if the petitioner shows that the state court's decision on a constitutional claim is "contrary to" or employs "an unreasonable application of" United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1-2). The statute authorizes federal court intervention "only when a state court decision is objectively unreasonable." *Visciotti,* supra, 537 U.S. at 27.

In applying the foregoing standard, I must also follow the rules laid down by higher courts with respect to procedural defaults. A claim not fairly presented to the state court may not be entertained by the federal district court because it has been procedurally defaulted. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir. 1991). Procedural default can also occur where the petitioner failed to comply with a state procedural requirement, *Coleman v. Thomson,* 501 U.S. 722, 729 (1991). A petitioner may only pursue a procedurally defaulted claim if he can show that failure to consider the claim will result in a "fundamental miscarriage of justice." *Id.* at 750. In practical terms this means that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delop,* 513 U.S. 298, 315, 327 (1995).

Mr. Garcia's first claim is that the Illinois Appellate Court committed reversible error in allowing his appointed appellate counsel to withdraw on motion without filing a brief on the merits.

5

However, appellate counsel and the state court complied with their responsibilities under *Anders v. California*, 386 U.S. 738 (1967). In his *Anders* brief, counsel specifically addressed the question of whether the trial court erred in denying Mr. Garcia's motion to reduce sentence. Neither he nor the appellate court found any other issue of arguable merit in the record. And Mr. Garcia has not raised any such issue. To the extent, if any, that Mr. Garcia is attempting to suggest that he was denied effective assistance of counsel the issue is procedurally defaulted. He elected to file a post-conviction petition in the state court, but did not give the state court the opportunity to consider the issue by raising it there. *U.S. ex rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001).

Mr. Garcia's second claim is that appellate counsel failed to raise the issue of the trial court's alleged error in denying the motion to reduce sentence. The record reveals that counsel addressed the issue in his *Anders* motion but opined that it was not meritorious. If Mr. Garcia is suggesting that it was error for the trial court not to impose the less severe sentence offered at the pre-trial conference, his argument fails. A sentence violates the Constitution if it is extreme and "grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Koo v. McBride*, 124 F.3d 869, 876 (7th Cir. 1997). Under Illinois law, he could have been sentenced to 55 years for the killing. The

Illinois Appellate Court's decision affirming the denial of the motion to reduce sentence is well-reasoned and thorough. It is not contrary to Supreme Court precedent, nor is it an unreasonable application of such precedent.

Mr. Garcia's third claim is that the trial court erred when it allowed into evidence the gun found by his side on the night of the shooting and his arrest. The Illinois Appellate Court reviewed the record with respect to this issue and held that it was error to have admitted the gun into evidence, but that the error was harmless because there was sufficient evidence of Mr. Garcia's guilt adduced at the trial (without taking the gun into consideration) to establish Mr. Garcia's guilt. The court further held that Garcia's statements made outside his home should not have been suppressed. I find that the Illinois courts correctly applied Supreme Court precedents. Moreover, this issue was not raised before at any stage of the proceedings and is procedurally defaulted. *Cawley v. DeTella*, 71 F.3d 691, 693 (7th Cir. 1995).

For the foregoing reasons, I deny the petition for habeas corpus. This case is terminated.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: April /0, 2006